UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DARRALYNN M. WINDISH,**

      **Plaintiff,**

v.                                       Case No.  8:06-cv-1842-T-TBM

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-five years of age at the time of her administrative hearing in December 2004. She stands 5', 5" tall and weighed 102 pounds. Plaintiff has a high school education.[2] Her past relevant work was as a machinist. Plaintiff applied for disability benefits

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

[2]The ALJ and the parties state that the Plaintiff has a high school education. *See* (R. 31); (Doc. 17 at 3); (Doc. 18 at 2). The transcript of the hearing indicates, apparently mistakenly, that Plaintiff graduated from college. *See* (R. 447).

and Supplemental Security Income payments in October 2003, the protective filing date, alleging disability as of August 23, 2003, by reason of Gillian-Barre syndrome, depression/anxiety/panic disorder, high blood pressure, dizziness, shortness of breath, numbness, blurred vision, and tightness in her chest. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that she could not work because of anxiety and depression, high blood pressure, lower right abdominal pain caused by Guillian-Barre syndrome, numbness in her legs, and twitching of the face. Plaintiff underwent a hysterectomy in February 2003, returned to work too early, and things went downhill from there. She last worked in August 2003, when she was fired because she was ill and had to go to the hospital. While she is able to drive, she does not like to leave the house because of traffic and losing her direction. She avoids dealing with other people because they intimidate her. She generally feels negative and does not want to hear what other people have to say. Plaintiff must prepare herself mentally for two days just to go to the grocery store. She testified that her anxiety affects her ability to work because she is unable to focus on things, she experiences a shaking and burning inside, she is lost for words, and she forgets the questions. Plaintiff takes Lorazepam, Lamictal,[3] Effexor, and Seraquil on occasion, but she indicated that the pills were

---

[3]The transcript of the hearing reads "Lamitol" instead of "Lamictal."

not working and caused her side effects such as flu-like symptoms and involuntary leg movements.

As for her other complaints, Plaintiff takes extra strength Tylenol for the numbness in her legs, and Lorazepam helps with pain. Plaintiff described a constant back pain that starts in her lower back, moves through her pelvis, and goes into her legs. Her facial twitching is constant but does not prevent her from working. She takes a couple of medications for her high blood pressure, including Enalayl, which helps. Besides forgetting the questions posed to her during the hearing, Plaintiff indicated that she also experiences memory and concentration problems. For example, she has trouble carrying on a conversation or following directions, and she has noticed problems with her numbers. She described three-day periods of little or no appetite, and her weight fluctuates by four to six pounds. Plaintiff testified that another side effect of her medication is dizziness. She is right-handed, but Plaintiff complains that since the home invasion, arthritis in her left thumb causes her to be unable to hold parts. Although her blood pressure improved after her hospitalization and it is generally controlled by medication, when her blood pressure is high, her face becomes flushed and she gets a headache. When she went into the hospital, she lost feeling in her face, and her eyes and mouth would not close; she described the pain as unbearable and causing her to vomit. After the diagnosis was made, she underwent a plasmaspheresis, which improved her condition.

Plaintiff estimated that she can probably sit comfortably for an hour at a time and three hours in an eight-hour day. She can stand about twenty minutes at a time for two and a half or three hours per day, after which she begins to experience back pain that she describes as

her "backbone feels like it's going to fall through [her] pelvis." She can lift five to eight pounds or a gallon of milk. She can push things around but otherwise cannot lift anything else. Plaintiff estimated that she could walk about a block, and then she becomes very tired. When she is napping during the daytime, her legs "start hopping around," and she has trouble sleeping.

She is able to drive and owns a truck. She gets up around 7:00 in the morning, performs household chores, cares for the horse, and makes breakfast. She then naps for three or four hours because she is tired and in pain. In the afternoon, she makes lunch or dinner and eats and maybe feeds the horses again. She will take another four-hour nap at 6:00 in the evening, watch television for a couple of hours, then sleep for another two hours. Plaintiff indicated that she has had trouble sleeping at night after she was the victim of a home invasion where two men broke into her home, beat her with a pipe, and stole her belongings. As a result of this experience, she feels insecure, unsafe, and afraid. Plaintiff indicated that there are times, approximately a couple of times per week, when her overall energy level is high, and this burst of energy can last two hours or two days. During these periods, she will do things around the house or just stay awake with her eyes open, since she experiences anxiety during these times. Plaintiff also complains about her depression and testified that she is constantly depressed, will cry during her depressed states, and sometimes hides in her room and stays in bed for two, three, or four days. Although Plaintiff denied having visual or auditory hallucinations, she described feeling a touching, as if there are spirits in the house, or out-of-body experiences when she looks down upon herself. While Plaintiff tested positive for

marijuana and benzodiapam in the past, Plaintiff denied smoking marijuana any more. *See* Plaintiff's testimony (R. 446-72).

Willis Hall, Plaintiff's friend of two or three years and her housemate, testified that Plaintiff was once an "impressive" and "active girl" who worked, owned a car and house, raised her own child, and loved horses. Since her hysterectomy and home invasion, she has slowed down, become reclusive, forgets things, and must be persuaded to ride horses now because of her low energy level. (R. 472-74).

The ALJ also took testimony from a vocational expert ("VE"), Gerald Wili, who testified upon an assumption of an individual who is forty-four years old and a high school graduate; capable of sitting for four hours during the day and standing for four out of eight hours during the day; lifting ten pounds; and able to perform simple, routine, repetitive tasks; but needing work in a low-stress atmosphere where there is only occasional decision-making. Upon this assumption, the VE opined that Plaintiff could not perform her past relevant work but could perform work such as that of cashier II, toll collector, or as a bench assembler. With an additional limitation that such person needed to work with things rather than people, the VE opined that the cashier II job and the toll collector job would involve some contact with the public and if such person could have no dealings with people at all, these jobs would be eliminated. However, if some brief contact with people was possible, the limitation would have minimal effect on these jobs. Upon the additional assumption that the individual becomes dizzy each day for ten to fifteen minutes at a time, she would be unable perform a job dealing with customers such as collecting tolls, but she might be able to work in bench assembly if she

could count that period as a break. On questioning from Plaintiff's counsel and returning to the first assumption, the VE further opined that such person would be precluded from all work if she needed to take a two-hour nap during an eight-hour workday; if she had real problems being alert and attentive and could not focus on what she was doing; or if she needed to take off one or two days at a time to work up the courage to leave the house on a sustained basis. If she could only sit for three hours total and stand for three hours total in an eight-hour day, she would not be capable of full-time employment. (R. 474-83).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of July 21, 2005, the ALJ determined that while Plaintiff has severe impairments related to anxiety, depression, hypertension, and back pain, she nonetheless had the residual functional capacity to perform a limited range of light work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 39-41). The Appeals Council considered additional evidence and denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) Did the ALJ err in finding Claimant did not meet Listing 12.04?

(2) Does new evidence sent to the Appeals Council warrant remand?

By her first claim, Plaintiff argues that the ALJ erred in finding that Plaintiff does not meet the depressive syndrome criteria of Listing 12.04A in light of the notes and assessment of her treating psychologist, Dr. Charles G. Walker and the nurse practitioner. By this argument, the records from this doctor reveal findings satisfying the criteria of this listing and are uncontradicted by any other evidence. Urging that the whole of this doctor's records suggest a treating relationship, Plaintiff urges that, at a minimum, the case should be remanded for further consideration.

In this circuit, when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Here, Plaintiff cites to records from Dr. Walker, which contains one treatment note by him and additional treatment notes from Susan Hansted, ARNP, in Dr. Walker's office and spans at least five months.[4]  *See* (R. 328, 329, 330-31). Plaintiff argues that her relationship with this doctor and his nurse should be viewed as a treating relationship, and his broad-ranging assessment that she had "poor" functional abilities should be accorded substantial weight and found to satisfy the Listing 12.04A. *See* (R. 280-89).[5]

In response, the Commissioner disputes that Dr. Walker had a treating relationship with Plaintiff such that the ALJ was required to give more weight to his opinion than to any other opinion in the record. Such opinions include those of Dr. Whiting, a consultative examining physician, and Dr. LeVasseur and Dr. Deatrick, state agency non-examining physicians, who all opined that Plaintiff did not have a severe mental impairment and did not

---

[4] Ms. Hansted's notes reflect that she saw Plaintiff eight times from 6/7/04 to 11/12/04. *See* (R. 328, 330-31).

[5] Plaintiff argues that even if Dr. Walker had no treating doctor relationship, his opinions should be afforded more weight that the other consultative and non-examining doctors' notes of record.

9

meet the requirements of a listing. By Dr. Whiting's February 19, 2004, psychological consultative evaluation, Plaintiff was found to suffer a non-severe dysthymic disorder with a fair prognosis and depression over her physical condition, but Dr. Whiting assessed no limitations from this diagnosis.[6]

As to notes from Dr. Walker's office, the Commissioner observes that Ms. Hansted diagnosed Plaintiff with bipolar disorder and prescribed various anti-depressant medications. However, Ms. Hansted assessed no limitations and noted Plaintiff's ability to keep her appointments, interact appropriately during her appointments, and that she responded well to her medication. In contrast to the notes taken by Ms. Hansted and by Dr. Whiting, Dr. Walker's notes from August 18, 2004, indicate that Plaintiff was depressed, tearful, unable to hold a conversation, and unable to think for herself. The Commissioner suggests that Dr. Walker's impression of Plaintiff may have stemmed from a negative reaction to Paxil, which Plaintiff had just started taking prior to her appointment with Dr. Walker and which Plaintiff stopped taking shortly after seeing Dr. Walker because the drugs made her more unstable and anxious. Therefore, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal a listed impairment, including Listing 12.04.

---

[6]The Commissioner cites the two non-examining state agency doctors' conclusions as well. In February 2004, Dr. LeVasseur concluded that Plaintiff's dysthymic disorder was not severe, and he noted Plaintiff's minimal mental health treatment history and her ability to understand and remember instructions, complete tasks with adequate persistence and pace, work a regular schedule, and be socially appropriate and cooperative. (R. 245-57). In May 2004, Dr. Deatrick reviewed Plaintiff's record as well and concurred that Plaintiff's mental condition alone was not severe. (R. 265-77).

The Listing of Impairments ("listings") in the Social Security Regulations identifies impairments that are considered severe enough to prevent a person from engaging in gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of his age, education, or work experience. An ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the claimant to prove that he or she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a claimant must present specific findings that meet the various tests listed under the applicable listing. Where the claimant claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).

Because I find that the ALJ has stated adequate good cause to discount the assessment of Dr. Walker, I conclude that Plaintiff is not entitled to relief on the claim that she met Listing 12.04A. Under the applicable standard, an ALJ may reject the opinions of even a treating doctor when the treating source's opinion are not bolstered by the evidence, the evidence supports a contrary finding, or the treating source's opinion is conclusory or

11

inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). As the decision reflects, the ALJ discounted Dr. Walker's assessment because he had evaluated Plaintiff on only one occasion; his opinions were not consistent with other evidence of record, including the reports of Nurse Hansted; and his opinions were based on subjective complaints contradicted by other reports of Plaintiff to another examining doctor and contradicted by her testimony at the hearing concerning her daily activities. After a full consideration of the record, I am compelled to conclude that these findings by the ALJ are supported by substantial evidence and state adequate good cause to permit him to discount Dr. Walker's assessment.

First, the record indicates that Dr. Walker saw Plaintiff on only one occasion before giving his assessment, and the assessment is based in large part on Plaintiff's subjective complaints. While the doctor's nurse practitioner had seen Plaintiff on several occasions and was handling her prescription regimen, there is no evidence that the doctor himself had developed a treatment relationship with her at the time of the assessment. In any event, I can find little in any mental health medical record that would support the very severe and near across-the-board functional mental limitations given by the doctor. The limitations are not indicated by anything noted by Nurse Hansted and appear in significant conflict with the assessment of the consultative evaluation by Dr. Whiting.[7] Plaintiff's daily regiment included

---

[7]Plaintiff urges that Dr. Whiting's assessment was not in conflict with that of Dr. Walker. However, their observations and conclusions on Plaintiff's mental state are significantly at odds. According to Dr. Whiting, Plaintiff was alert and well-oriented, and she reported a relatively active and fairly normal daily regimen. While she was anxious, depressed about her physical condition, and had suffered some recent stressors, he found Plaintiff functioning at the low average range intellectually with fair memory and concentration and

activities that appear inconsistent with some of Dr. Walker's extreme findings. By my reading of the decision, the ALJ was aware of the applicable standard and sought to comply with it. Even if Dr. Walker was a treating doctor, I am obliged to conclude that there is adequate good cause stated in the opinion to permit the ALJ to give the assessment less than controlling weight. Absent this assessment, there is no basis in the record to support the contention that Plaintiff's mental condition met or equaled the listing at 12.04A.

With respect to her second claim concerning new evidence submitted to the Appeals Council ("AC"), Plaintiff argues that the case should be remanded to the ALJ for further consideration of that evidence.[8] By her argument, the new evidence supports her complaints of severe low back pain and contradicts the ALJ's findings and conclusions regarding the severity of her spinal problems. Specifically, Plaintiff cites to a doctor's note discussing a May 13, 2005, lumbar MRI, which revealed a slight posterolisthesis of L4 on L5 with loss of disc hydration, a herniated disc, and a disc bulge at L5-S1. *See* (R. 358). A cervical MRI taken at the same time showed a reversal of the cervical lordosis, a loss of disc height and hydration, with disc bulge at C5-C6 and C6-C7. *Id.* In connection with these notes, Plaintiff was

---

capable of handling her own affairs. By his diagnoses, she suffered dysthymic disorder and polysubstance dependence with a fair prognosis. (R. 240-42). On the other hand, Dr. Walker relied on the diagnoses made by his nurse practitioner for bipolar disorder and PTSD, and assessed Plaintiff severely limited in concentration, attention, and memory and essentially unable to do anything on her own. (R. 280-89).

[8]Plaintiff submitted to the AC medical reports related to treatment she received as a result of a motor vehicle accident in April 2005, new treatment notes from a mental health provider, and old treatment notes from Dr. Shephard dating back to 1997. The records all appear to predate the ALJ's decision. Counsel claims that some of the records were sent to the ALJ prior to the date of decision, although they were not addressed in the decision. In any event, these records were admitted into the administrative record by the AC.

reporting numbness and tingling in the extremities, low back pain, jaw pain, and some maxillary pain. *Id.* Plaintiff submits that this evidence is "new" because it did not exist at the time of the hearing and relates to the period between the hearing and decision, and "material," since it demonstrates continuing neck pain and severe low back pain due to the herniated lumbar disc. Additionally, Plaintiff summarily argues that other new evidence of treatment for depression and anxiety, an April 2005 cervical CT scan that showed cervical spondylosis with disc space narrowing at C5-C6, mild spinal stenosis, and blood work abnormalities also require further consideration by the ALJ.

The Commissioner does not dispute that this evidence is new, but he argues that Plaintiff has not demonstrated that the evidence is material such that a remand is warranted. The Commissioner contends that the new medical records related to the accident fail to reflect a clear diagnosis, and no physician assessed any restrictions or limitations as a consequence of the accident. The Commissioner notes also that the MRI cited in the reports is not in the record.

Section 405(g) of Title 42 authorizes a district court to remand an application for benefits to the Commissioner by two methods, commonly denominated as "sentence four remands" and "sentence six remands." Each sentence "remedies a separate problem." *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). As that decision is pertinent to this claim, the Eleventh Circuit held that when a claimant properly presents new evidence to the AC, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous under sentence four. *Id.* at 1262. In essence, the AC's

denial of a request for review is part of the "final decision" of the Commissioner and is subject to judicial review. *Id.* at 1264.[9] The AC "must consider new, material, and chronologically relevant evidence and must review the case if the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.* at 1261. When the AC refuses to consider new evidence submitted to it and it denies review, that decision is subject to judicial review because it amounts to an error of law. *Id.*; *see also Barclay v. Comm'r of Soc. Sec. Admin.*, No. 07-12960, 2008 WL 649184 (11th Cir. Mar. 12, 2008) (citing *Keeton*, 21 F.3d at 1066). When reviewing the AC's denial of review, the court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the AC must consider in making its decision whether to review an ALJ's decision." *Barclay*, 2008 WL 649184, at * 4 (citing *Falge*, 150 F.3d at 1324).

The new evidence pertinent to this claim consists of notes from the Brooksville Regional Hospital made on the day of the motor vehicle accident, notes of follow-up care at St. Joseph's Hospital, and treatment notes from doctors at Bay Area Rehab Specialists.

---

[9]On the other hand, "[s]entence six of 42 U.S.C. section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time to the district court." *Ingram,* 496 F.3d at 1267. Under this provision, a court may remand a case to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To demonstrate that a remand for consideration of new evidence is appropriate, the Plaintiff must demonstrate that: (1) there is new, non-cumulative evidence; (2) the evidence is material, i.e., relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir.1998); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

Additionally, there are treatment notes from Dr. Sharad Lakdawala, who saw Plaintiff for her mental state between January and May 2005. Records from each of these medical sources were entered into the administrative record and according to the AC, considered by it in denying the request for review on the conclusion that "this information does not provide a basis for changing the [ALJ's] decision." (R. 6-7). After a full consideration of this new evidence, I conclude that the AC did not err in denying Plaintiff's request for review of the denial of benefits.

Clearly, nothing in the records from either Brooksville Regional or St. Joseph's would suggest that the AC erred in denying benefits.[10] Both describe the motor vehicle accident as involving minor injury. Plaintiff checked out from Brooksville Regional on the same date of the accident. Objective tests at Brooksville Regional revealed no fractures in the cervical spine, although there was some evidence of spondylosis of C5-C6 with mild spinal stenosis but no evidence of disc protrusion. (R. 408-09). Follow-up care at St. Joseph's consisted mainly of renewing pain medications for her cervical strain. There were no new or significant clinical or objective findings during that period of care. (R. 374-95).

Plaintiff next sought treatment with Dr. Sassano and Dr. Shepard at Bay Area Rehab Specialists in May 2005. Throughout their treatment, Plaintiff complained of headaches, jaw

---

[10]Similarly, Dr. Lakdawala's notes do not call for a remand. While they reflect that Plaintiff continued to complain of anxiety and/or depression, the treatment notes reflect that her depression and anxiety were brought under control rather quickly with medication. In her last note, the doctor indicates that Plaintiff was coping "well" and her depression was "better controlled." (R. 368). Significantly, there are no functional limitations imposed by this doctor. (R. 368-73). The additional records from Dr. Bruce D. Shephard are not new and appear wholly unrelated to the arguments made on this claim. (R. 415-43).

pain, and back pain for which she was prescribed medication and provided physical therapy. Plaintiff was diagnosed by both doctors with cervical, dorsal, and lumbosacral strain/sprain. In the final note, the doctor's assessment was for this strain/sprain, TMJ syndrome, and herniated disc at L4-L5. The notes reflect little helpful clinical findings. However, there are notes about May 2005 MRIs of Plaintiff's cervical and lumbar spine which showed degenerative changes in the cervical spine and a herniated disc at L4-L5 and a bulge at L5-S1, which were not previously known to the ALJ and which Plaintiff submits likely would change the administrative result. However, as the Commissioner notes, apart from the MRIs themselves, the reports from these treating doctors change little if anything. While the doctors assessed somewhat different diagnoses of Plaintiff's condition, their care was conservative by way of medications and physical therapy. Most significantly, neither imposed any restrictions or functional limitations on the Plaintiff. Thus, the AC could properly conclude that this new evidence did not reveal injuries that would cause greater functional limitations than those assessed by the ALJ and would not change the administrative result such that a remand is required.[11]

---

[11] In *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214 (11th Cir. 2001), the court remanded a case for consideration of new evidence that *contradicted* the ALJ's findings and conclusions regarding Vega's spinal problems. Such is not the case here. As the decision reflects, while the ALJ discounted Plaintiff's pain complaints, in part, on the basis of her medical record, the ALJ stated further, "There is no mention from the claimant's treating physicians that her physical impairments were as severe as she has alleged and no physician gave restrictions in reference to the claimant's physical limitations that would support her allegations." (R. 38). While the new evidence is not wholly insignificant, it does not contradict or even call into question the ALJ's conclusion concerning the severity or import of Plaintiff's back pain. Plaintiff makes no showing that the doctors treating her post-accident complaints believed that her condition imposed functional limitations beyond that already assessed which might further reduce Plaintiff's residual functional capacity. In these circumstances, the AC could conclude

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 28th day of March 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

the new evidence was not material such that it likely would alter the ALJ's conclusion, and no remand was or is required.